# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                              NO. 4:12CR00001-01 JLH

SALMAN MOHAMMED ALKHALDI                                             DEFENDANT

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to these findings and recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation. The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

DISPOSITION

Defendant Salman Mohammed Alkhaldi ("Alkhaldi") has filed a motion to dismiss the indictment in the case at bar. See Document 19. For the reasons that follow, the undersigned recommends that the motion to dismiss be denied.

Alkhaldi is an alien who is present in the United States on a student visa, a visa the Government characterizes as a "non-immigrant 'F Visa.'" See Document 33 at 1. On November 6, 2011, he allegedly used a firearm to wound another individual. Alkhaldi was charged in state court with the commission of that offense and was also charged in federal court with one count of being an alien in possession of a firearm in violation of 18 U.S.C. 922(g)(5).

Alkhaldi maintains that the indictment should be dismissed because 18 U.S.C. 922(g)(5) is unconstitutional for the following two reasons: first, the statute is unconstitutional because it violates his right to equal protection; and second, the statute is unconstitutional as applied to him. He buttresses his two-fold assertion by maintaining that the right protected by the Second Amendment is enjoyed not only by citizens of the United States but also by non-citizens legally present in the United States.[1]

---

[1]

Specifically, Alkhaldi maintains the following: "The court should hold [section] 922(g)(5), with the special exemptions that deny equal protection, unconstitutional as applied to [him] under the Second Amendment, Second Amendment equal protection, or both. Second Amendment rights are fundamental rights for the 'people,' and 'people' is not limited to 'citizens.' [He] has established 'sufficient connection with this country to be considered a part of that community.' He was not an illegal alien [footnote omitted], but he's not a permanent resident either, but it does not matter under the Second Amendment." See Document 40 at 10-11.

The Government opposes Alkhaldi's motion to dismiss. The Government maintains that Alkhaldi is being prosecuted pursuant to clause (B) of 18 U.S.C. 922(g)(5), a clause that prohibits an alien admitted to the United States under a nonimmigrant visa from possessing a firearm unless the alien satisfies one of the exceptions delineated in 18 U.S.C. 922(y)(2). Because Alkhaldi cannot satisfy any of the exceptions, the Government maintains his "as applied" and "facial" challenges to the indictment are without merit.[2]

---

2

Specifically, the Government maintains the following:

United States immigration laws make a classification distinction between aliens who are present in the United States. There are two broad general classifications, immigrant aliens and non-immigrant aliens. Immigrant aliens are those seeking to enter the United States and to remain here permanently. Non-immigrant aliens are those who are admitted for a specific time and/or for a specific purposes.

[Alkhaldi] is a foreign student who was temporarily admitted into the United States under a non-immigrant 'F Visa." As a non-immigrant alien, [Alkhaldi] was prohibited from possessing a firearm under 18 U.S.C. 922(g)(5)(B). ([Alkhaldi] has been expelled from UALR. One condition of his nonimmigrant visa is that he remain enrolled in school full time. By failing to remain enrolled in school, [he] is now "out of status." Therefore, [he] is no longer legally entitled to be in the United States; however, that change has no bearing on the pending charge.)

18 U.S.C. 922(g)(5) prohibits certain aliens from possessing firearms. Pursuant to clause (A), illegal and unlawfully present aliens cannot possess a firearm. This clause is not the clause with which [Alkhaldi] is charged.

Pursuant to clause (B), an alien admitted to the United States under a nonimmigrant visa, like [Alkhaldi] is prohibited from possessing a firearm UNLESS he satisfies a specific exception described in section 922(y)(2). It is clause (B) with which [Alkhaldi] is charged and that prohibits [him] from possessing a firearm. [He] does not satisfy any of the (y)(2) exceptions.

In his motion, [Alkhaldi] appears to lump all lawfully present aliens, immigrant and nonimmigrant, into the same group. For the purposes of the issue before the Court, this is not appropriate, since [he] is not a permanent resident alien.

See Document 33 at 1-2. Resolving the pending motion to dismiss does not require the undersigned to consider the Government's assertion that Alkhaldi's status has now changed to "out of status."

18 U.S.C. 922(g)(5) provides that it shall be unlawful for any person who, being an alien, "(A) is illegally or unlawfully in the United States; or (B) except as provided in [18 U.S.C. 922(y)(2)], has been admitted to the United States under a nonimmigrant visa …" to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."[3] 18 U.S.C. 922(y)(2) provides that 18 U.S.C. 922(g)(5)(B) does not apply to an alien lawfully admitted to the United States under a nonimmigrant visa if the alien also falls within certain categories described by the statute.[4] Alkhaldi does not argue that he is covered by the express terms of 18 U.S.C. 922(y)(2). The question posed by his motion is whether the Second Amendment nevertheless guarantees him the right to possess a firearm.

The Second Amendment to the United States Constitution provides, in full, the following: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The amendment guarantees an individual's right to possess a firearm unconnected with service in a militia

---

[3]

The phrase "nonimmigrant visa" is defined in 8 U.S.C. 1101(a)(26). It means "a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in [the Immigration and Nationality Act]."

[4]

The categories of individuals include the alien "admitted to the United States for lawful hunting or sporting purposes or is in possession of a hunting license or permit lawfully issued in the United States," "an official representative of a foreign government who is accredited to the United States Government or the Government's mission to an international organization having its headquarters in the United States," and "a foreign law enforcement officer of a friendly foreign government entering the United States on official law enforcement business." See 18 U.S.C. 922(y)(2).

and to use the firearm for traditionally lawful purposes. See <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008). Because the litigant laying claim to the right in <u>Heller</u> was a United States citizen, though, "the question of whether an alien, illegal or legal, has a right to bear arms was not presented, and the [Supreme] Court took care to note that it was not purporting to 'clarify the entire field' of the Second Amendment." See <u>United States v. Portillo-Munoz</u>, 643 F.3d 437, 440 (5th Cir. 2011), <u>cert</u>. <u>denied</u>, 132 S.Ct. 1969 (2012).

As to whether the Second Amendment guarantees an alien the right to possess a firearm, this much is clear: "the protections of the Second Amendment do not extend to aliens illegally present in this country." See <u>United States v. Flores</u>, 663 F.3d 1022, 1023 (8th Cir. 2011). What, then, of the alien legally present in this country? Although there is not a wealth of authority on that question, a district court in Massachusetts has found that "lawful <u>permanent</u> resident aliens … are protected by the Second Amendment right to bear arms." See <u>Fletcher v. Haas</u>, 2012 WL 1071713 at 13 (D.Mass. 2012) [emphasis in original]. The district court in that case specifically noted, though, that it was not deciding whether the Second Amendment right was enjoyed by "<u>all</u> lawfully admitted aliens." See <u>Id</u>.

The key to answering the question posed by Alkhaldi's motion to dismiss is found in the construction of the phrase "the people" as used in the Second Amendment. In <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259 (1990), the Supreme Court considered the right of aliens to the protection afforded by the Fourth Amendment, another

amendment containing the phrase "the people." In that case, the Supreme Court noted that the phrase seems to have been a "term of art employed in select parts of the Constitution." See Id. at 265. The Supreme Court noted that the use of the phrase suggests that "'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." See Id. at 265.

Based on the foregoing construction of the phrase "the people," the district court in Fletcher v. Haas arrived at the outcome it did, observing that "[l]awful permanent resident aliens are firmly on the path to full citizenship and, although not obligated to take that path to its destination, are entitled to a wide array of constitutional rights." See Fletcher v. Haas, 2012 WL 1071713 at 10 [footnotes omitted]. As additional support for the finding that lawful permanent resident aliens enjoy Second Amendment rights, the district court quoted United States v. Verdugo-Urquidez for the proposition that lawful permanent resident aliens have "necessarily 'developed sufficient connection with this country to be considered part of [the] community.'" See Id. at 12.

What, then, of the lawful resident alien who is not permanent, but who is temporarily in this country? Court have routinely made distinctions between categories of legal aliens. For instance, in United States v. Huitron-Guizar, 678 F.3d 1164 (10th Cir. 2012), the Court of Appeals addressed an illegal alien's challenge to the constitutionality

of 18 U.S.C. 922(g)(5). The alien acknowledged that those guilty of serious crimes and the mental ill are sensibly stripped of firearms but wondered "what it is about aliens that permits Congress to impose what he consider[ed] a similar disability." See Id. at 1166. The Court of Appeals answered the question in the following manner:

> … The starting point to any answer was given by Justice Jackson in Johnson v. Eisentrager, 339 U.S. 763, 770 … (1950):
>
>> The alien, to whom the United States has been traditionally hospitable, has been accorded a generous and ascending scale of rights as he increases his identity with our society. Mere lawful presence in the country creates an implied assurance of safe conduct and gives him certain rights; they become more extensive and secure when he makes preliminary declaration of intention to become a citizen, and they expand to those of full citizenship upon naturalization.
>>
>> This ascending scale of constitutional rights is elaborate. An alien outside the country has fewer rights than one within, e.g., an alien held at the border has no right to a deportation hearing. … An unlawfully present alien has fewer rights than one lawfully here; an illegal alien generally has no right to assert a selective-enforcement claim to thwart deportation. … A lawful alien here fewer than five years can be denied enrollment in Medicare, unlike one here for, say, a decade. … A temporary resident alien has fewer rights than a permanent resident alien; the former, for example, may be barred from making campaign contributions. … Likewise, a lawful permanent resident has fewer rights than a citizen, since a state can form a citizens-only police force. …

See Id. at 1166-1167.

In this instance, the Court finds that Alkhaldi is not in the class of persons who are part of the national community or who have otherwise developed sufficient connection with this country to be considered part of that community for purposes of the Second

Amendment. He did not come to the United States with the intention of gaining citizenship and, thus, is not firmly on the path toward that goal. There is nothing to suggest he intends to abandon his foreign resident. Instead, he was allowed to enter this country temporarily and for one purpose only: to pursue educational opportunities.

Since Alkhaldi does not belong to the group of people, encompassed within the phrase "the people," to whom the Second Amendment guarantees the right to possess a firearm, his facial challenge to 18 U.S.C. 922(g)(5) has no merit.[5] His motion to dismiss the indictment in the case at bar should be denied.

DATED this ____17____ day of September, 2012.



UNITED STATES MAGISTRATE JUDGE

---

[5]

The Government cites United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010), a case that provides, in part, the following:

> … a two-part approach to Second Amendment claims seems appropriate under Heller, as explained by the Third Circuit Court of Appeals, see Marzzarella, 614 F.3d at 89, and Judge Sykes in the now-vacated Skoien panel opinion, see 587 F.3d at 808-09. The first question is "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. See Heller, 128 S.Ct. at 2816. If it was not, then the challenged law is valid. See Marzzarella, 614 F.3d at 89. If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny. See id. Heller left open the issue of the standard of review, rejecting only rational-basis review. Accordingly, unless the conduct at issue is not protected by the Second Amendment at all, the Government bears the burden of justifying the constitutional validity of the law.

Because 18 U.S.C. 922(g)(5) does not burden conduct protected by the Second Amendment in this instance, it is not necessary for the undersigned to determine the appropriate level of scrutiny governing Alkhaldi's challenge.