# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

UNITED STATES OF AMERICA                                                                      PLAINTIFF

v.                                         NO. 4:12CR00001-01 JLH

SALMAN MOHAMMED ALKHALDI                                                              DEFENDANT

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to these findings and recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

DISPOSITION

INTRODUCTION. Defendant Salman Mohammed Alkhaldi ("Alkhaldi") has filed two separate motions to suppress and a supplemental motion to suppress. See Documents 16, 17, and 25. For the reasons that follow, the undersigned recommends that the motions be granted in part, denied in part, and denied as moot.

FACTS. Alkhaldi is an alien who is present in the United States on a student visa. On the morning of November 6, 2011, he left a residence he shared with his girlfriend and did so without telling her. She later discovered that her handgun was missing, having found its empty case in a room with his belongings. She attempted to locate him but was unsuccessful. She then reported the situation to the Little Rock Police Department ("LRPD").

Officers with the LRPD interviewed Alkhaldi's girlfriend at approximately 11:06 a.m. on the morning of November 6, 2011. After the interview, she was able to speak with Alkhaldi by telephone. They subsequently met at a local church and returned to their residence. Once at the residence, Alkhaldi removed some or all of his belongings from the residence, placed them in his black 2006 BMW, and drove with his girlfriend to a local shopping mall. He then left his vehicle at the shopping mall and drove with his girlfriend and another individual to the LRPD. Upon arriving at the LRPD, he turned himself in as a suspect in a shooting that had occurred earlier in the day at an apartment complex in Little Rock.

Officers with the LRPD then interviewed Alkhaldi's girlfriend a second time. She told them of meeting with Alkhaldi at the shopping mall, divulged the location of his vehicle, and reported that he admitted shooting someone. At some point, the officers interviewed a witness to the shooting. The witness reported that the perpetrator left the scene of the shooting in a black BMW. The officers also interviewed the victim of the shooting. The victim stated that he was familiar with Alkhaldi and identified him in a photo spread as the perpetrator. Based on the foregoing information, officers with the LRPD seized Alkhaldi's black BMW at the shopping mall and had it towed to the LRPD Crime Scene Bay for processing.

On November 7, 2011, a LRPD detective prepared an affidavit in support of an application for a warrant to search Alkhaldi's vehicle. The affidavit provided, in part, the following:

> Comes Detective Jordan Neufer of the Little Rock Police Department Homicide Squad, on oath states that he has reasonable cause to believe and does believe that in the vehicle; Black 2006 BMW 3251 (VIN#WBAVB13546PT02904); which was being operated by Salman Mohammed Alkhaldi … on November 6th, 2011 and is stored in the Crime Scene Bay for the Little Rock Police Department, Little Rock, Pulaski County, Arkansas. Said vehicle is now concealing possible evidence of a crime and is therefore subject to seizure. Said evidence being a possible hand gun, ammunition, possible DNA evidence and other physical evidence; said items being evidence that a crime was committed, Affiant prays a Search and Seizure Warrant should be issued.

See Document 16 at 17. The detective then outlined the facts he believed constituted reasonable cause for the warrant; they were as follows:

On 11/06/2011, at approximately 0909 hours, Officers were dispatched to 13500 Chenal Parkway, Little Rock, AR, 72211 (Chenal Lakes Apartments) in reference to a "Disturbance with a Weapon." Officers were also dispatched to 9601 Lile Drive, Little Rock, AR, 72205 (Baptist Hospital) in reference to a "Subject Shot." Officers were able to determine that Mr. Mohammad Bader Alotaibi … had been shot at Chenal Lakes Apartments by Mr. Salman Mohammed Alkhaldi … Mr. Alotaibi then drove himself to Baptist Hospital where he was being treated for a single gunshot wound. Baptist medical personnel advised his injuries appeared to be non-life threatening at this time.

Mr. Robert Teer … and Ms. Wende Dandrea …responded to the Downtown Detectives Office to give statements in reference to this incident. Mr. Alotaibi's vehicle was towed to the Crime Scene Bay to be processed. Crime Scene also responded to Chenal Lakes Apartments to process the scene for any items of evidentiary value.

On 11/06/2011, at approximately 2245 hours, Mr. Alkhaldi turned himself in to Officers in the Rivermarket. Mr. Alkhaldi refused to give a statement in reference to this incident. Detectives then responded to Baptist Hospital where they made contact with Mr. Alotaibi. Mr. Alotaibi positively identified Mr. Alkbaldi as the person who shot him from a photo spread. Mr. Alotaibi then gave a taped statement in reference to this incident.

Ms. Dandrea then responded back to the Downtown Detectives Office where she gave an additional statement in reference to this incident. She advised Mr. Alkbaldi admitted to shooting an individual on today's date and advised he threw the weapon into the river. She further advised she and Mr. Alkbaldi parked his 2006 Black BMW at the Park Plaza Mall (6000 W. Markham St., Little Rock, AR, 72205). Detectives responded to Park Plaza Mall and located the vehicle in the parking lot. The vehicle was towed to the Crime Scene Bay to be processed.

Wherefore, Affiant is of the opinion that there is evidence inside the vehicle (VIN#WBAVB13546PT02904) that was being operated by Salman Mohammed Alkhaldi … and is related to the incident being investigated by Detective Jordan Neufer … The Affiant prays that a Search and Seizure Warrant be issued allowing the said evidence to be obtained from said vehicle.

See Document 16 at 17-18. A state court judge thereafter signed a warrant authorizing the search of Alkhaldi's vehicle ("car warrant").

Alkhaldi's vehicle was searched pursuant to the car warrant. A digital camera, laptop, and external hard drive were found in his vehicle. Two weeks later, the same LRPD detective prepared affidavits in support of applications for warrants to search the camera, laptop, and external hard drive. With regard to the affidavit in support of the application for a warrant to search the camera, he represented, in part, the following:

> … Detective Jordan Neufer … on oath states he has reasonable cause to believe and does believe that in the camera … which was in the vehicle being operated by Salman Mohammed Alkhaldi … on November 6th, 2011 … is now concealing possible evidence of a crime and is therefore subject to seizure. Said evidence being possible photograph(s) of a hand gun and other digital evidence; said items being evidence that a crime was committed, Affiant prays a Search and Seizure Warrant should be issued.
>
> …
>
> On 11/07/2011, at approximately 1015 hours, a search and seizure warrant was obtained for Mr. Alkhaldi's vehicle and at approximately 1049 hours, the search and seizure warrant was executed. During the execution of said warrant, a Black/Silver Sony Cyber-shot DSC-W330 Digital Camera … was located in the center console of the vehicle. It is believed that this camera is now concealing possible evidence of a crime.

See Document 16 at 11-12. The detective concluded his affidavit by representing that he was of the opinion there was evidence in the camera related to the shooting. A state court judge thereafter signed a warrant authorizing the search of the camera ("camera warrant").

-6-

The camera found in Alkhaldi's vehicle was searched pursuant to the terms of the camera warrant. The search allegedly uncovered photographs that incriminate Alkhaldi, photographs the Government apparently intends to use in prosecuting him for being an alien in possession of a firearm in violation of 18 U.S.C. 922(g)(5).

THE MOTIONS TO SUPPRESS. Alkhaldi filed two separate motions to suppress and a supplemental motion to suppress. In the first motion, he challenged the affidavit offered in support of the camera warrant. See Document 16. He maintained that there was no probable cause for issuing the warrant because there was no showing the camera was linked to the crime he allegedly committed. Moreover, he maintained that the constitutional violation committed by the officers could not be excused on the basis of good faith.

In a supplemental motion to suppress, Alkhaldi advanced an additional ground for suppressing the evidence obtained pursuant to the camera warrant, that being, the affidavit supporting the request had a material omission. See Document 17. He maintained that the omitted fact was as follows: other LRPD officers knew the items found in the vehicle were probably not in it at the time of the shooting but were likely placed in it when Alkhaldi removed some or all of his belongings from his residence.

In the second motion to suppress, Alkhaldi retracted a previous admission that the car warrant was valid. See Document 25. He maintained that the car warrant was not valid because it was based on mere opinion, specifically, the detective's opinion that something linked to the shooting might be found in Alkhaldi's vehicle.

The Government opposed Alkhaldi's motions to suppress and supplemental motion to suppress. The Government maintained that the car warrant was issued on probable cause and not on the opinion of the LRPD detective. The Government also maintained that the seizure and search of, inter alia, the camera was permitted by the car warrant and, alternatively, by the automobile exception to the Fourth Amendment. The Government last maintained that no evidence should be suppressed because the searches were conducted in good faith reliance upon the warrants.

THE FOURTH AMENDMENT. The Fourth Amendment provides that no warrant shall issue but upon probable cause. In United States v. Keele, 589 F.3d 940 (8th Cir. 2009), the Court of Appeals provided the following guidance in addressing a motion to suppress on the ground that the warrant lacked probable cause:

> … probable cause is determined based on the information before the issuing judicial officer. … We look to the totality of the circumstances to determine whether an affidavit is sufficient to demonstrate probable cause. … Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place …

See Id. at 943 [internal citations and quotations omitted]. An essential component of a probable cause determination is the demonstration by the affiant of a nexus or link between the evidence sought and the place to be searched. See Id.[1]

---

[1] "… it is the contraband being sought in the warrant application, not that already recovered, that must be linked sufficiently to the place to be searched." See United States v. Keele, 589 F.3d at 943.

THE CAR WARRANT. A review of the affidavit submitted in support of the car warrant demonstrates that probable cause was presented to the issuing judge and justified the issuance of the warrant. There was probable cause to believe Alkhaldi shot another individual and fled the scene of the shooting with a firearm in his possession and in a black BMW, the latter of which was the object of the car warrant. Although Alkhaldi allegedly told his girlfriend he disposed of the firearm after the shooting, the facts as provided the issuing judge in the detective's affidavit establish probable cause to search the vehicle.

The foregoing determination does not end the inquiry with regard to the search of the contents of the camera found in Alkhaldi's vehicle. The Government maintains that the search of the camera's contents was permitted by the car warrant and, alternatively, by the automobile exception to the Fourth Amendment. It is well-settled that when searching an automobile, the police may conduct "a 'probing search' of compartments and containers within the automobile so long as the search is supported by probable cause." See California v. Acevedo, 500 U.S. 565, 570 (1991) [(quoting United States v. Ross, 456 U.S. 798, 800,  2d 572 (1982)].[2] The scope of such a search "is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to

---

[2] Although Acevedo and Ross involved warrantless automobile searches, the rules articulated in those decisions apply equally to a search pursuant to a warrant because "the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant." See United States v. Ross, 456 U.S. at 825.

believe that it may be found." See United States v. Ross, 456 U.S. at 824. The police may "search every part of the vehicle and its contents that may conceal the object of the search." See Id. at 825. See also California v. Acevedo, 500 U.S. at 580 ("We therefore interpret Carroll as providing one rule to govern all automobile searches. The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").[3]

Assuming that Alkhaldi's camera was a container, the LRPD detective could only search its memory pursuant to the car warrant if the memory may have contained objects within the scope of the warrant. In the instant case, although the warrant described the place to be searched with particularity, namely, Alkhaldi's vehicle, it failed to describe with particularity the objects for which the detective was authorized to search. Rather, the warrant offered no explanation of or qualification to its authorization for the detective to seize "evidence from the vehicle." See Groh v. Ramirez, 540 U.S. 551, 558 (2004) ("[T]he warrant did not describe the items to be seized *at all*.") (emphasis in original).

---

[3] Of course, the application of these authorities depends upon treating Alkhaldi's camera as a "container" of the digital photographs. The Tenth Circuit has questioned whether such an analogy is appropriate in light of the capacity of "digital containers" to store vast amounts of personal data. See United States v. Burgess, 576 F.3d 1078, 1090 (10th Cir. 2009) ("In spite of clear language in Acevedo, one might speculate whether the Supreme Court would treat laptop computers, hard drives, flash drives or even cell phones as it has a briefcase or give those types of devices preferred status because of their unique ability to hold vast amounts of diverse personal information."); United States v. Carey, 172 F.3d 1268, 1275 (10th Cir. 1999) ("Relying on analogies to closed containers or file cabinets may lead courts to oversimplify a complex area of Fourth Amendment doctrines and ignore the realities of massive modern computer storage."). Nevertheless, the analogy to physical containers is reasonable in this case inasmuch as the digital camera is intended only, or at least primarily, to store digital photographs rather than a potpourri of all types of digital documents.

Nevertheless, in interpreting the car warrant, the Court must use common sense, consider all of the circumstances, and give due regard to the specifics of the supporting affidavit, which in this case was attached to and referenced in the warrant. See United States v. Riesselman, 646 F.3d at 1077 ("Although a search warrant must be particular, adequate reference to an affidavit or attachment listing items to be searched or seized can satisfy the requirement." Here, the supporting affidavit explains that the detective was looking for "evidence [of] a possible hand gun, ammunition, possible DNA evidence and other physical evidence[.]" When this description of the "things to be seized" is imported into the search warrant, the warrant's otherwise apparent lack of particularity is corrected.

However, it is readily apparent that the allegedly incriminating photographs contained in Alkhaldi's camera do not fall within the scope of the car warrant. Because a camera only stores information in a digital format, no reasonable police officer would think that a camera's digital memory could store a handgun, ammunition, DNA evidence, or other physical evidence. Thus, the car warrant did not permit the detective to search the contents of the camera. Indeed, the detective who performed the search of Alkhaldi's vehicle had some doubts about whether he was permitted to search the contents of the camera based on the car warrant because he sought a separate warrant to search the camera.

Finally, the good faith exception only applies where probable cause is lacking, not where the search exceeded the scope of the warrant. See United States v. Angelos, 433

F.3d 738, 746 (10th Cir. 2006). The undersigned therefore concludes that the search of the camera's contents was not permitted pursuant to the car warrant or the automobile exception to the Fourth Amendment.

<u>THE CAMERA WARRANT</u>. A review of the affidavit submitted in support of the camera warrant reflects that the LRPD detective hoped to find "possible photograph(s) of a hand gun and other digital evidence …" His affidavit reflects that "[i]t is believed that this camera is now concealing possible evidence of a crime" and that "[a]ffiant is of the opinion that there is evidence inside the camera … relating to the incident being investigated …" The affidavit, though, provides no facts upon which a neutral third party could reasonably conclude that such photographs might be on the camera. At most, the detective represented that the camera had been found in Alkhaldi's vehicle. Why, then, did the detective suspect that the camera might contain possible evidence of a crime? The answer to that question was provided during the hearing on Alkhaldi's motions to suppress. During the hearing, the detective admitted to turning the camera on and viewing the possibly incriminating photographs, thus prompting him to apply for a warrant to search the camera. Specifically, he testified as follows:

> Question: Did you suspect that there may be some sort of evidence on there [<u>i.e.</u>, the camera]?
>
> Answer: Not until I looked at the camera; no.

In other words, the detective had no expectation of discovering anything of evidentiary value in the camera. Consistent with this honest appraisal of the likelihood of finding evidence in the camera, save the camera being found in Alkhaldi's vehicle, the affidavit contained nothing to link the camera's contents to the shooting or why the camera might contain pictures of a handgun. Because it cannot be said that the affidavit gave the issuing judicial officer "reason to believe that evidence of a crime will be found at the place to be searched," see United States v. Rodrigue, 560 F.3d 29, 33 (1st Cir. 2009), the required nexus is absent in this instance.[4]

The ordinary sanction for a violation of the Fourth Amendment has long been the "suppression of the evidentiary fruits of the transgression." See United States v. Houston, 665 F.3d 991, 994 (8th Cir. 2012) [quoting United States v. Fiorito, 640 F.3d 338, 345 (8th Cir. 2011)]. The exclusionary rule does not apply, though, when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" See Id. [quoting United States v. Leon, 468 U.S. 897, 920 (1984)]. The good faith exception applies if "the executing officer's reliance upon the warrant was objectively reasonable." See Id. at 995. The exception does not apply, though, in the following instances:

(1) when the affidavit or testimony supporting the warrant contained a

---

[4] See also United States v. Falso, 544 F.3d 110 (2nd Cir. 2008) (no nexus between child pornography website and defendant when only evidence was his name, address, and e-mail address associated with website and his prior sex offense conviction); United States v. Carney, 683 F.Supp. 2d 513 (W.D.Ky. 2010) (no nexus between defendant's apartment and his alleged possession of forged instruments and counterfeit currency).

> false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence <u>entirely</u> <u>unreasonable</u>;" and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

<u>See</u> <u>Id.</u>[quoting <u>United States v. Prole</u>, 485 F.3d 427, 431 (8th Cir. 2007)].

In this instance, the LRPD detective's declaration in the affidavit that "[i]t is believed that this camera is now concealing possible evidence of a crime" could not have been made without his premature and undisclosed search of the camera. Without that initial unauthorized search of the camera, his truthful representation to the issuing judicial officer would have been consistent with his testimony at the suppression hearing, that being, he did not suspect that there would be evidence in the camera <u>until</u> he looked in it. Under the state of facts, as the detective knew them to be, his belief in the existence of probable cause was entirely unreasonable.

The motion to suppress the evidence obtained from the execution of the car warrant should be denied. <u>See</u> Document 25. The motion to suppress the evidence obtained from the execution of the camera warrant, though, should be granted. <u>See</u> Document 16. Alkhaldi's supplemental motion to suppress should be denied as moot. <u>See</u> Document 17.

DATED this ___18___ day of September, 2012.

                                              UNITED STATES MAGISTRATE JUDGE