# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                NO. 4:12CR00001-01 JLH

SALMAN MOHAMMED ALKHALDI                                 DEFENDANT

## OPINION AND ORDER

Salman Mohammed Alkhaldi has been indicted on charges that he violated 18 U.S.C. § 922(g)(5)(B), which makes it a felony for an alien admitted to the United States under a nonimmigrant visa to possess a firearm, with certain exceptions stated in 18 U.S.C. § 922(y)(2). Alkhaldi filed a motion to suppress certain evidence and a motion to dismiss the indictment on Second Amendment grounds. The Court referred both motions to United States Magistrate Judge H. David Young, who conducted an evidentiary hearing, heard arguments, and gave the parties an opportunity to file briefs following the evidentiary hearing. Judge Young has submitted proposed findings and a recommended disposition on both motions, and the time for objecting has expired.

Judge Young recommended that the motion to suppress be granted. Neither party has objected to that recommended disposition. After careful review, the proposed findings and recommended disposition regarding the motion to suppress are adopted in their entirety as this Court's findings in all respects.

With respect to the motion to dismiss on Second Amendment grounds, Judge Young recommended that the Court deny the motion to dismiss, holding that "the people" protected by the Second Amendment does not include persons in the United States on nonimmigrant visas. Alkhaldi has objected to Judge Young's proposed findings and recommended disposition. Upon *de novo* review, the Court concludes that the proposed findings and recommended disposition should be and

hereby are adopted as this Court's findings and disposition, with the following comments added to address an argument raised belatedly by Alkhaldi and not addressed by Judge Young.

As noted, Alkhaldi's motion to dismiss was a motion to dismiss on Second Amendment grounds. After the hearing before Judge Young, Alkhaldi submitted a brief in which he raised, for the first time, an equal protection argument relating to the exceptions created in section 922(y)(2). Section 922(y)(2) provides that subsection (g)(5)(B) does not apply to an alien who has been lawfully admitted to the United States under a nonimmigrant visa if that alien is—

> (A) admitted to the United States for lawful hunting or sporting purposes or is in possession of a hunting license or permit lawfully issued in the United States;
>
> (B) an official representative of a foreign government who is--
>
>> (i) accredited to the United States Government or the Government's mission to an international organization having its headquarters in the United States; or
>>
>> (ii) en route to or from another country to which that alien is accredited;
>
> (C) an official of a foreign government or a distinguished foreign visitor who has been so designated by the Department of State; or
>
> (D) a foreign law enforcement officer of a friendly foreign government entering the United States on official law enforcement business.

18 U.S.C. § 922(y)(2). Alkhaldi argued as follows:

> This statute satisfies neither standard of review [intermediate or strict scrutiny], particularly when one considers the fact a Canadian hunter with a U.S. state hunting license can bring a long gun for a day or less and not commit a federal crime but a student with a five year student visa commits a crime when he possesses a handgun for self-defense. Consider also a "distinguished foreign visitor"–so America is not classless after all. We recognize that we can arbitrarily designate someone a "distinguished foreign visitor," not a political or military leader, and they can pack a gun? How about the Rolling Stones, Celine Dion, and Elton John. Are they not by definition "distinguished foreign visitors"? What about Steven Hawking? David Beckham, a rich British soccer player in Los Angeles? What about the dozen Japanese baseball players playing in U.S. Major League Baseball?

2

Document #40, at 8 (footnotes omitted).  Later, Alkhaldi argued,

> The statute's exemptions, which the government says defendant does not qualify for, because he didn't jump through the necessary hoops to legally have a firearm, leads to a completely absurd result: Alaska borders on three Canadian provinces, and six other provinces border the lower 48 states, and the statute makes it legal for a Canadian hunter to come to the U.S. for a day or less to hunt with a rifle and go home yet it makes it a crime to possess a handgun for self-defense for a man who is here on a five year visa who is attempting to integrate into American society as a student, a fifth of his life.  That makes no sense, and it violates the Second Amendment outright and Second Amendment equal protection.

*Id.* at 10.  In his objection to the report and recommendation, Alkhaldi argued:

> While a student visa was found by Judge Young to be not a significant enough connection to the United States under *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), what of the exceptions in § 922(y)(5) [sic] which underscore defendant's equal protection argument?  If the people listed in 922(y)(5) [sic] somehow have a sufficient connection to the United States to avoid criminal liability, then a student on a student visa should, too.
>
> And, that is the crux of the Second Amendment equal protection argument:  Some people get preferential treatment without logical justification.  922(y)(5) [sic] creates classes of visiting foreigners contrary to the genius of America's [allegedly] classless society.  We don't discriminate against foreigners under Title VII and anywhere else in the Constitution.  Why can we discriminate under the Second Amendment?
>
> \* \* \*
>
> The [proposed findings and recommended disposition] does not discuss equal protection cases from the states.  It doesn't have to we suppose, but the fact that other courts are against the holding should at least merit discussion and rejection, if it can be.

Document #43, at 3-4.

Upon receiving the objection, the Court invited the government to respond to the equal protection argument, since the government previously had not had an opportunity to respond to that argument.  After the government responded, Alkhaldi submitted a reply, in which he argued:

> Congress's Orwellion finding, adopted by the government, that some non-citizens are more equal than others and have special rights under this statute only makes defendant's equal protection argument for him.  What possible reason is there for that?  Where's the rational basis, if that's even the test?  The government doesn't

3

offer much if at all and admits that there was no Congressional weighing in the first place. A little weighing would tend to show rational basis. A non-citizen with a hunting license? You're free to possess a firearm as long as you're hunting elk with an AR-15 with a license, and that's not a felony, but fear for your safety and get a handgun for personal protection and you are committing a felony. Does that make *any* sense? Where's the rational basis for this?

Document #57, at 3. In the conclusion to his reply brief, Alkhaldi argued:

Congress's creation of these special exemptions from the provisions of the statute makes no sense, has no logical or rational justification, and it violates equal protection of the law under the Fifth Amendment, and even a Second Amendment equal protection.

Document #57, at 11.[1] Thus, Alkhaldi's equal protection challenge is in addition to his Second Amendment challenge and is based on the argument that section 922(y)(2) arbitrarily exempts similarly situated aliens from the reach of the statute.

Although the Fifth Amendment, unlike the Fourteenth Amendment, does not contain an equal protection clause, the Supreme Court nonetheless has held that the Fifth Amendment's due process clause prohibits the United States from denying persons equal protection of the law. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213-18 (1995); *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S. Ct. 612, 670, 46 L. Ed. 2d 659 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").

The concept of equal protection is based on the fundamental principle that the government "must govern impartially." *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S. Ct.

---

[1] Alkhaldi also states that he will assert at trial that he possessed a weapon in self defense and will seek a jury instruction on the self-defense argument. The Court will address that issue at the instructions conference. Alkhaldi has also cited cases from state courts' interpreting state laws and holding that state law cannot distinguish between aliens and citizens with respect to gun rights. It appears that he is citing those cases in support of his argument that the exceptions in section 922(y)(2) create an equal protection violation. The Court will regard those cases as persuasive authority on that point, which appears to be the only equal protection argument raised by Alkhaldi, as the quotations from his briefs indicate.

1355, 1367, 59 L. Ed. 2d 587 (1979). Yet, "[a] legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyer v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L. Ed. 2d 786 (1982). When a governmental unit adopts a policy that impacts fewer than all the persons within its jurisdiction, that policy necessarily classifies persons into different groups, and the issue arises as to whether the policy violates the fundamental principle of impartiality. *Beazer*, 440 U.S. at 587-88, 99 S. Ct. at 1367.

The constitution's guarantee of equal protection of the laws applies to all aliens. *See Plyer*, 457 U.S. at 210, 102 S. Ct. at 2391. The levels of scrutiny that may apply to equal protection challenges brought by aliens differ, however. Disparate treatment of similarly situated aliens will be upheld if the government's classification passes rational basis scrutiny. *See, e.g.*, *Geach v. Chertoff*, 444 F.3d 940, 945 (8th Cir. 2006). Under rational basis scrutiny, the person challenging the classification has the burden of proving that the classification is arbitrary and cannot conceivably advance a legitimate governmental interest. *United States v. Smith*, 171 F.3d 617, 624 (8th Cir. 1999); *see United States v. Lewis*, 236 F.3d 948, 949 (8th Cir. 2001) (upholding 18 U.S.C. § 922(g)(9), which provides that a person convicted of a domestic-violence misdemeanor loses the right to carry a gun but people convicted of other misdemeanors do not lose that right, because "Congress could legitimately believe that the problem of domestic violence is sufficiently serious to deserve separate treatment").

As noted above, Alkhaldi argues that sections 922(g)(5)(B) and 922(y)(2) make arbitrary classifications whereby certain groups of aliens who have been lawfully admitted to the United States

5

under nonimmigrant visas may possess firearms while others cannot. An alien lawfully admitted to the United States under a nonimmigrant visa may possess a firearm if the alien possesses a hunting license or a permit lawfully issued in the United States, is designated by the State Department as an official representative of a foreign government or a distinguished foreign visitor, or is a foreign law enforcement officer of a friendly foreign government on official law enforcement business; other aliens admitted on nonimmigrant visas may not possess a firearm. 18 U.S.C. § 922(y)(2). The issue is whether Alkhaldi has shown that these distinctions are arbitrary and cannot conceivably advance a legitimate governmental interest; he has not.

In distinguishing between aliens admitted on nonimmigrant visas who may possess firearms and those who may not, Congress was entitled to consider which persons are likely to have a legitimate reason to possess a firearm and which persons are not. Persons who are accredited by the State Department as official representatives of foreign governments or distinguished foreign visitors,[2] as well as foreign law enforcement officers of a friendly government on official business, may have legitimate reasons to possess firearms, such as a greater than usual need for security for government personnel or for transporting important government documents and equipment. Similarly, that someone has a hunting license or permit requirement is some indication that the person has a legitimate and innocent reason to possess a firearm.

True, the fit between the conceivable rationales for the exceptions and the statutory language creating them is imperfect: the exceptions are too broad because someone with a hunting license may possess a firearm that has no connection to hunting purposes; yet the exceptions also are too narrow

---

[2] Alkhaldi speculates that the State Department may designate entertainers or athletes as "distinguished foreign visitors," but he offers nothing to show that it has done so or would do so. The Court will not presume that the State Department has no legitimate basis for designating someone as falling within this category.

6

because many persons without hunting licenses or permits would not use firearms for unlawful purposes. Still, legislation reviewed under rational basis scrutiny does not violate the constitutional requirement of equal protection merely because the classifications are imperfect. *See Beazer*, 440 U.S. at 592-94, 99 S. Ct. at 1369-70 (upholding a classification that was broader than necessary); *Ry. Express Agency, Inc. v. New York*, 336 U.S. 106, 109-10, 69 S. Ct. 463, 465-66, 93 L. Ed. 533 (1949) (upholding a regulation that prohibited less than all of the type of evil it addressed).

Moreover, in enacting the exceptions to section 922(g)(5)(B) in section 922(y)(2) regarding representatives of foreign governments, Congress was entitled to consider the United States' relationships with foreign governments and the need to ensure that government personnel are safe and secure when visiting foreign countries. The statute allows certain representatives of foreign governments the same security and right to firearms that the United States might desire for its personnel abroad; eliminating or narrowing those exceptions might endanger American personnel abroad by causing foreign governments to prohibit them from possessing firearms. The same may be true for persons who formerly represented the United States in the State Department or the Defense Department, for example, and who continue to travel abroad. These delicate international considerations reveal precisely why "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government" and why courts should be hesitant to overturn the political branches' decisions in this area. *Mathews v. Diaz*, 426 U.S. 67, 81, 96 S. Ct. 1883, 1892, 48 L. Ed. 2d 478 (1976) ("Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive

than to the Judiciary."); *Graham v. Richardson*, 403 U.S. 365, 377, 91 S. Ct. 1848, 1854, 29 L. Ed. 2d 534 (1971) ("The National Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization." (internal quotation marks omitted)).

Alkhaldi has failed to show that the classifications that he challenges cannot conceivably advance a legitimate governmental interest, so his Fifth Amendment equal protection challenge is overruled.

## CONCLUSION

For the reasons stated above, Salman Mohammed Alkhaldi's motion to suppress is GRANTED. Documents #16, #17, and #25. Alkhaldi's motion to dismiss on Second Amendment grounds is DENIED. Document #19.

IT IS SO ORDERED this 6th day of November, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE